## CONNORS ET AL. v. CONNORS ET AL.

MARRIAGE—VALIDITY—EVIDENCE.

1.  A marriage is valid, although solemnized without a license.

2.  A marriage, regularly solemnized, is valid, where a license was issued but not recorded.

3.  In a contest over distribution of property of the estate of a decedent intestate, between collateral heirs, and the widow and children, a letter written during the lifetime of the intestate to him by the wife (now widow) and mother admitting her unfaithfulness and the illegitimacy of one of the children is not admissible.

4.  Such a letter does not tend to show the invalidity of the marriage, nor can it be admitted in evidence as affecting the legitimacy of the children and their property interests.

5.  Neither, for the same reason, in such a contest, is a letter admissible written by said wife and mother to a man whom,

she addresses as "husband" and with whom she is sup-
posed to have improper relations, and which letter is
claimed to contain language derogatory to the legitimacy
of the children.

[Amended petition filed in District Court January 20, 1894. De-
cided July 1, 1895.]

ERROR to the District Court for Albany County, HON.
JOHN W. BLAKE, Judge.

This was an action brought on the probate side of the dis-
trict court, in the matter of the estate of Charles Connors,
deceased, by certain children of a deceased brother of Charles
Connors, deceased, claiming to be the only heirs at law to his
estate. The petition alleged that said Charles Connors left
neither mother, father, brother, sister, wife or children sur-
viving him. The answer alleged a marriage between said
Charles Connors and one Augusta Burke, their living together
as husband and wife for many years, the birth of one child
during the lifetime of the deceased, and a posthumous child
about two months after his death. The claimants assailed the
validity of the marriage, and the legitimacy of the children,
attempting the latter by an endeavor to show that Charles
Connors was impotent, and that his wife was unfaithful. The
testimony of two witnesses who were present at the marriage,
and that of the widow, disclosed that at Laramie City, Wyo-
ming, on the 14th day of August, 1876, the said Charles Con-
nors and one Augusta Burke (the latter now claiming to be
the widow), were united in marriage by a Presbyterian minis-
ter, the pastor of a church at Laramie, and a certificate of
marriage was presented and identified, signed by the officiat-
ing clergyman. The records in the office of the county clerk
did not show any book of marriage license records covering
that period, except a book labeled "Index to marriage license
record." In this book there was an entry as follows: "August
15, 1876, Charles Connors and Augusta Burke." The birth
of the children was proven, and that said Charles Connors
and Augusta Connors had lived and cohabited together from
the time of the solemnization of their marriage until about

the 3rd day of May, 1892. At that time said Augusta Connors went to Denver. On July 23, 1892, said Charles Connors died intestate, by suicide, leaving an estate consisting of real and personal property. Elmer T. Beltz was appointed administrator of his estate. A letter purporting to have been written to Charles Connors by his wife, from Denver, was offered in evidence and excluded. The letter addressed him as "Mr. Connors," and was signed "Augusta," and, among other things, stated, "As I know it is no use to try deny or excuse anything, so it is best to tell the truth; you know as well as I do how it is, because you took and opened the letter I wrote to Bob; you know from that the baby is not yours; so the truth might as well be told." She suggested in the letter that he procure a divorce, and that she was never coming back to him. Another letter from her to one Robert Cowper was also offered and excluded, wherein she addressed him as "My own darling hubsand," and referred to the fact that he had others to look after besides himself, and generally exhibiting much affection for him. Augusta Connors, as a witness, testified that the two children, and one other who had been born dead, were born to the deceased Charles Connors and herself. Considerable additional testimony was introduced touching the physical condition of the husband, the baptism of the child born during the lifetime of the deceased, and the relations existing between husband and wife during the time they lived together. The trial court found that a license had been issued, the marriage ceremony had been performed, that the parties had lived and cohabited together as husband and wife thereafter until May 3, 1892, that the child Carl was born May 3, 1891, and the child Robert on September 28, 1892. That said children are the issue of the marriage of said Charles and Augusta Connors and born in lawful wedlock, and are the legitimate children of said parties; and that Charles Connors was not impotent. It was also found that Augusta Connors was the widow of the deceased, and that she and the said two children are the only heirs at law of said decedent. The collateral claimants to the estate brought error. At the time of the marriage, 1876, the statutes in reference thereto were, so.

far as material, as follows: "In law, marriage is considered a civil contract, to which the consent of parties capable of contracting is essential." (Comp. L. '76, p. 478; R. Stat., sec. 1541.) "Previous to the solemnization of any marriage in this territory, a license for that purpose must be obtained from the county clerk of the county wherein the marriage is to take place." (Comp. L., p. 478; Rev. Stat., sec. 1544.) "Every judge and justice of the peace, and every licensed and ordained preacher of the gospel, may perform the ceremony of marriage in this territory." (Comp. L., p. 478; R. S., sec. 1548.) Two witnesses beside the minister or magistrate are required. (Comp. L., p. 479; R. S., sec. 1549.) Every person having authority to join others in marriage shall, within three months after the solemnization of any such marriage, make and deliver to the county clerk of the county in which the marriage took place, a certificate containing the particulars mentioned in the preceding section." (C. L., p. 479; R. S., sec. 1551.) The preceding section provides for the issuing of a certificate to the parties by the one performing the ceremony.

*S. W. Downey* and *W. H. Fishback,* for plaintiffs in error.

No presumption of marriage can exist in this State until the record is made and recorded in the county clerk's office. (R. S., secs. 1544, 1556.) Until recorded, no presumption exists that a license was issued. The statute is mandatory, and no legal marriage can be performed without a compliance with it. There is no evidence that the one performing the ceremony was a licensed or ordained minister of the gospel, and the findings are silent on that matter. The certificate of marriage was erroneously admitted in evidence. (R. S., sec. 2221; L. 1890, p. 294; People v. Slack, 15 Mich., 193; Waymire v. Jetmore, 22 O. St., 271; McDeed v. same, 67 Ill., 545; People v. Bennett, 39 Mich., 208; Wightman v. same, 4 Johns. Ch., 343.) When the contract essential to the validity of a marriage is wanting because a party is unable to give the required assent, or does not really consent, being induced by fraud, or duress, such party becoming free to consent, or upon

exposition of the deception, may or may not recognize the marriage. A failure to consent is a sufficient dissent. (Shatter v. State, 20 O., 1; Jinkins v. same, 2 Dana (Ky.), 102.) The marriage was void because of the impotency of Connors. (2 Bouv. L. D., 109; 2 Kent's Com., 40; Powell v. same, 18 Kan., 371; Patterson v. Gaines, 6 How., 550; Rawdon v. Same, 28 Ala., 565; Stewart on Mar. & Div., 141; Lincoln v. same, 6 Rob. (N. Y.), 525; Dean's Med. Jur., 8-10; Smith v. Morehead, 6 Jones Eq., 360; 2 Phill., 10; 2 Hagg., 332.)

*C. E. Carpenter*, for defendants in error.

The facts show a valid marriage. (Cooley's Blackst., 434-39; Meister v. Moore, 96 U. S., 78.) Impotency is ground for divorce, and, to be availed of, suit must be brought within two years after the marriage is solemnized. (1 Cooley's Blacks., 434-5; Comp. L. '76, p. 295; R. S., sec. 1595.) No court, after the death of one of the parties, will nullify a marriage and render the issue thereof illegitimate. The statute not so declaring it a marriage is not void because the prescribed formalities are not complied with. (Cartwright v. McGowan, 121 Ill., 388; Farley v. same, 94 Ala., 501; State v. Bittick, 103 Mo., 183; Fenton v. Reed, 4 Am. Dec., 244.) The essentials of a valid marriage is capacity and consent. A contract of marriage made per verba de presenti is a valid marriage. Once entered into, and which may be voidable, cannot be cast aside at the pleasure of the parties, but can only be avoided by the injured party by judicial decree. (Fornshill v. Murray, 18 Am. Dec., 344; Farley v. same, supra; Vorhees v. same, 46 N. J. Eq., 411; 1 Bish. Mar. & D., sec. 116.)

Conaway, Justice.

The four infant plaintiffs in error are the nephews and nieces of Charles Connors, deceased. Defendants in error are Augusta Connors, his widow, and Elmer T. Beltz, administrator of his estate. The plaintiffs in error claim to be his heirs at law to the exclusion of his widow and children, and bring this proceeding in error to review and reverse a judg-

ment and decree of the district court for the distribution of the estate to his widow and children. These children are Carl Arthur Raymond Connors, born to defendant in error Augusta Connors while she and Charles Connors were living together as husband and wife, and Robert Connors, a posthumous child born two months after the death of Charles Connors.

Plaintiffs in error seek to establish two propositions: First, that there never was a valid marriage of Charles and Augusta Connors, and, second, that Carl Arthur Raymond Connors and Robert Connors are not the children of Charles Connors, deceased.

The exclusion of evidence of admissions and statements of Augusta Connors, including two letters written by her, one to Charles Connors and one to another man, is assigned as error. This evidence was properly excluded. There was nothing in it tending to show that the marriage of Charles Connors and Augusta was invalid, or that she was not his wife, though it might be an unfaithful wife. Neither is it admissible as evidence affecting the legitimacy of Carl Arthur Raymond Connors and Robert Connors and their property interests, such interests being represented by Elmer T. Beltz, administrator, one of the defendants in error. Augusta Connors was sworn and examined as a witness in the case. This is the proper way to procure her testimony—not by unsworn statements or letters. It is proven beyond question that Charles and Augusta Connors were married on August 14, 1876, and lived together as husband and wife until May 3, 1892, when she went to Denver. There is no claim that they were ever divorced. The trial court finds as conclusion of law that this was a valid marriage, whether any license was obtained from the county-clerk or not. This is a correct proposition of law, although the parties participating in such ceremony might be criminally liable in case of the absence of such license. But the testimony shows satisfactorily that a license was issued but not recorded, as the only record of marriage licenses as of that time appearing in the county clerk's office is an index of such licenses. This license is indexed as of the

day after the marriage—probably a mistake in the date.   The evidence sustains the judgment of the district court in favor of defendants in error, and the judgment is affirmed.

Groesbeck, C. J., and Potter, J., concur.